Case 4:18-cv-02489 Document 4 Filed on 11/19/19 in TXSD Page 1 of 16

United States District Court
Southern District of Texas
**ENTERED**
November 19, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-13-0746 |
| | § | CIVIL ACTION NO. H-18-2489 |
| SHARON IGLEHART | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2255 is the Government's Response (Document No. 203) to Defendant/§ 2255 Movant Sharon Iglehart's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (Document No. 199). Having considered Iglehart's § 2255 Motion to Vacate, Set Aside or Correct Sentence, the Government's Response, the record of the proceedings in the underlying criminal case and on appeal, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that the Movant's § 2255 Motion to Vacate, Set Aside or Correct Sentence be DENIED, and that this § 2255 proceeding be DISMISSED with prejudice.

### I.    Introduction and Procedural History

Movant Sharon Iglehart ("Iglehart"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C. § 2255. This is Iglehart's first motion pursuant to § 2255.

On December 11, 2013, Iglehart was indicted for conspiracy to commit health care fraud, and health care fraud (Document No. 1). The Indictment was superseded two times, with the Second Superseding Indictment alleging that Iglehart engaged in a conspiracy to commit health care fraud

(count one), one substantive count of health care fraud (counts two), and three counts of making false statements relating to health care matters (counts three through five). Following seven days of trial, a jury found Iglehart guilty of all counts. On April 1, 2016, after the preparation of a presentence investigation report, to which Iglehart filed objections, Iglehart was sentenced to 144 months confinement, to be followed by a three year term of supervised release, and restitution in the amount of $6,363,528.82 (Document No. 150). A Judgment of Conviction was entered on April 13, 2016 (Document No. 153). On April 18, 2017, the Fifth Circuit Court of Appeals affirmed Iglehart's conviction, and Iglehart did not, thereafter, filed a petition for writ of certiorari with the United States Supreme Court.

On July 16, 2018, Iglehart, through counsel, filed her § 2255 Motion to Vacate, Set Aside or Correct Sentence, alleging claims of ineffective assistance of trial and appellate counsel. The Government, in response to that motion, argues that no relief is available on those claims.

## II. Claims

In three ineffective assistance of counsel claims, Iglehart maintains that:

1.    trial counsel was ineffective for "failing to properly object to the introduction of the TMB [Texas Medical Board] evidence at trial;"

2.    that appellate counsel was ineffective for "failing to raise a challenge to the sufficiency of the evidence with respect to the conspiracy count;" and

3.    that appellate counsel was ineffective for "failing to raise a challenge to the 'deliberate ignorance' jury instruction on appeal."

For the reasons set forth by the Government, and discussed in detail below, no relief is available to Iglehart on any of these ineffective assistance of counsel claims.

2

## III. Discussion

Claims of ineffective assistance of trial counsel are generally measured by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). To be entitled to relief on an ineffective assistance of counsel claim, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Id.* at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id.* at 687-689. The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

Under *Strickland*, judicial scrutiny of counsel's performance is highly deferential and a strong presumption is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (citing *Strickland*), *cert. denied*, 509 U.S. 921 (1993). In order to overcome the presumption of competency, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland*, a petitioner must be able to establish that absent his counsel's deficient performance the result of his trial would have been different, "and that counsel's errors were so serious that they rendered the proceedings unfair or the result unreliable." *Chavez*, 193 F.3d at 378. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S.

3

at 691.

    Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in the light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied*, 467 U.S. 1220 (1984). The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland*, 466 U.S. at 690-691. Counsel will not be judged ineffective only by hindsight.

    Claims of ineffective assistance of appellate counsel are generally assessed under the same two part *Strickland* deficiency and prejudice standard as claims of ineffective assistance of trial counsel. *Williams v. Collins*, 16 F.3d 626, 635 (5th Cir.), *cert. denied*, 512 U.S. 1289 (1994). With respect to *Strickland's* deficiency prong, "[o]n appeal, effective assistance of counsel does not mean counsel who will raise every nonfrivolous ground of appeal available." *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998), *cert. denied*, 525 U.S. 1174 (1999); *see also Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir.) ("The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal."), *cert. denied*, 493 U.S. 970 (1989). Rather, "[a]ppellate counsel is obligated to only raise and brief those issues that are believed to have the best chance of success." *Rose v. Johnson*, 141 F.Supp.2d 661, 704-705 (S.D. Tex. 2001). "It is not only reasonable but effective for counsel on appeal to winnow out weaker arguments and focus on a few key issues." *Mayo v. Lynaugh*, 882 F.2d 134, 139 (5th Cir. 1989), *modified on other grounds*, 893 F.2d 683 (5th Cir. 1990), *cert. denied*, 502 U.S. 898 (1991). "[O]nly when ignored issues are clearly

4

stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985) (cited with approval in *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).

As for *Strickland's* prejudice prong, in the context of an ineffective assistance of appellate counsel claim, "[p]rejudice results if the attorney's deficient performance would likely render either the defendant's trial fundamentally unfair or the conviction and sentence unreliable." *United States v. Dovalina*, 262 F.3d 472, 474 (5th Cir. 2001). When the claim of ineffective assistance of appellate counsel is based on counsel's failure to raise a claim or issue on appeal, prejudice is established if it is shown "that the appeal would have had, with reasonable probability, a different outcome if the attorney adequately addressed the issue" and "that the attorney's deficient performance led to a fundamentally unfair and unreliable result." *Id.* at 474-75.

Iglehart's ineffectiveness claims all relate, in one or another, to the claims that were, and were not, raised on appeal. In her first claim, Iglehart complains that her trial counsel did not properly object to the Texas Medical Board ("TMB") evidence that was introduced at trial, and that trial counsel's improper or incomplete objection rendered her challenge to the introduction of that evidence reviewable on appeal only for plain error. In addition, Iglehart complains that appellate counsel should have raised claims about the sufficiency of the evidence to support the jury verdict on the conspiracy count, and should have challenged the Court's "deliberate ignorance" instruction to the jury. Because these ineffectiveness claims all relate to Iglehart's appeal, the Fifth Circuit's decision on appeal is particularly important.

In that appeal, the Fifth Circuit decided two issues: whether the Court erred in admitting the TMB evidence and whether the Court properly determined the intended loss for Guideline

5

calculation purposes. In rejecting Iglehart's claim about the TMB evidence, the Fifth Circuit first summarized the evidence at trial:

> Iglehart was a psychiatrist in Houston, Texas, associated with Riverside General Hospital (Riverside). In addition to its inpatient hospital, Riverside offered "partial hospitalization programs" (PHPs) at off-site facilities. Medicare defines PHPs as providing psychotherapeutic and pharmacologic treatment to patients at least four days per week, for a minimum total of 20 hours per week. It was through her billing practices at two Riverside-owned PHPs – Riverside Southeast Mental Health Program in Houston (Southeast) and Riverside Dallas – that Iglehart was later convicted for, *inter alia*, defrauding Medicare and Medicaid.
>
> Medicare reimburses PHPs for their services, subject to several requirements. Among these requirements, PHPs must comply with federal record-keeping standards; in addition, a licensed physician must personally oversee and document the PHP's treatment programs.
>
> Iglehart worked as medical director and sole psychiatrist at Southeast from 2005 until 2009; Riverside Dallas, from 2011 until 2012. In this role, she was responsible for admitting patients, supervising treatment, and billing Medicare. Throughout this entire time period, Iglehart also worked as an attending physician at Riverside's inpatient psychiatric facility.
>
> Over the course of an investigation into Riverside's facilities, the Government discovered evidence of numerous billing irregularities committed by Iglehart. For example, she frequently used her admitting and referral authority to pass patients between Riverside's inpatient program and the PHPs, despite the patients' not being qualified for PHP treatment under Medicare. Moreover, she often backdated signatures and billed Medicare for face-to-face consultations at Riverside Dallas, despite billing for patients in Houston on the same day. Of particular relevance to the evidentiary issue at hand, Iglehart also billed Medicare for patient treatments in Houston, despite her being at a recordkeeping course in San Diego, California, pursuant to a Texas Medical Board (TMB) order, following an investigation in 2004 into Iglehart's billing practices. As a result of these, and other, billing practices, Riverside fraudulently billed Medicare and Medicaid over $22.7 million; Medicare and Medicaid reimbursed Riverside approximately $6.4 million.

*United States v. Iglehart*, 687 F. App'x 333, 334–35 (5th Cir. 2017). The Fifth Circuit then determined that because the Court had not "definitively" ruled in favor of allowing the TMB evidence, counsel should have objected to that evidence when it was offered and, given counsel's

6

failure to do so, the admission of the TMB evidence was reviewed "only for plain error." Upon plain error review, the Fifth Circuit rejected the claim:

> ... Under that [plain error] standard, Iglehart must show a forfeited plain (clear or obvious) error that affected her substantial rights. *Puckett v. United States*, 556 U.S. 129, 135, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009). If she makes that showing, we have the discretion to correct the reversible plain error, but should do so only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings". *Id.*
>
> Our court applies a two-prong test for admissibility under Rule 404(b): (1) the evidence must be "relevant to an issue other than the defendant's character"; and (2) the evidence's probative value must not be substantially outweighed by its prejudicial effect. *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978) (*en banc*). As noted above, Iglehart contends Blech's testimony explaining the TMB investigation fails the *Beechum* test as unfairly prejudicial character evidence. As also noted, she does not challenge the evidence of the San Diego trip or related recordkeeping training, objecting only to the underlying TMB investigation, which gave rise to the San Diego training. The Government responds, *inter alia*, that the testimony is: admissible to prove lack of mistake; and probative in order to disprove Iglehart's poor-recordkeeping defense.
>
> At trial, the testimony by Blech, TMB's assistant general counsel, was very brief:
>
>> Q: And has Sharon Iglehart been investigated by [TMB]?
>> A: Yes, she has.
>> Q: And when was that investigation concluded?
>> A: The investigation was concluded on July 25th, 2008, and the case was referred to the legal department at the TMB.
>> Q: And as a result of that investigation, was Dr. Iglehart required to attend a training course for physicians?
>> A: Yes. She entered into an agreed order, the terms of which required her to attend a PACE medical recordkeeping course.
>> Q: I'm sorry. PACE medical record—
>> A: Yes. The—the PACE is a University of San Diego physician program, and they have a recordkeeping course.
>
> There was no cross-examination.
>
> In its closing, the Government also reminded the jury about the TMB investigation: "Well, the evidence is that [Iglehart] also was subject to an investigation. Because of that, she had to go to medical recordkeeping training which—and you'll remember

7

> the San Diego trip.... But she billed for seeing patients when she was at that mandatory recordkeeping ... class".
>
> Assuming, *arguendo*, Blech's testimony about the investigation constituted character evidence offered "to show that on a particular occasion [Iglehart] acted in accordance with the character", Rule 404(b)(1), it does not rise to the level of reversible plain error. Applying *Beechum*'s two-prong test, any error was not "clear or obvious": it was not clear or obvious that Blech's testimony was not relevant to an issue other than Iglehart's character (namely, an issue concerning her recordkeeping practices and training); and it was not clear or obvious that the undue prejudice substantially outweighed the probative value. *Beechum*, 582 F.2d at 911. This is especially true given Iglehart's defense theory of poor recordkeeping and her comments, on direct examination, about the TMB sanctions.
>
> Moreover, even assuming, *arguendo*, a plain (clear or obvious) error, given the voluminous evidence of Iglehart's fraudulent-billing practices presented at trial, any such error did not affect her substantial rights. Over the course of a seven-day trial, Iglehart only points to two instances in which the Government mentioned the TMB investigation in a claimed inadmissible manner. In neither instance did the Government explain the underlying basis for the investigation or otherwise imply it was an indicator of guilt in the current prosecution; rather, the Government used the testimony to explain why Iglehart was in San Diego for recordkeeping training, despite billing for patients in Houston (evidence to which she does not object).

*Id.* at 337–38 (5th Cir. 2017). It is within the context of the Fifth Circuit's decision on appeal that Iglehart's ineffectiveness claims must be considered.

### A.   Trial Counsel

Iglehart first complains about trial counsel's failure to contemporaneously object to the admission of the TMB evidence under Rules 403 and 404(b). According to Iglehart, if a proper objection had been made, the Fifth Circuit would have considered the Rule 404(b) claim under a lesser "abuse of discretion" standard and a different result would have been obtained on appeal. While it is clear, based on the Fifth Circuit's decision, that trial counsel did not make a contemporaneous objection, this ineffectiveness claim fails for want of both deficiency and prejudice.

8

The record shows that the Government filed a Rule 404(b) Notice on December 5, 2014, disclosing its intent to introduce evidence at trial related to a Texas Medical Board investigation of Iglehart (Document No. 44). Iglehart filed a sealed Motion in Limine seeing to exclude that evidence as more prejudicial than probative (sealed Document No. 70). The Government filed a written response (Document No. 79), and the Court considered the issue on the record, stating that Iglehart's objections would be taken up when the offer of evidence was made. The Court also commented that the evidence appeared to "fit[] within 404(b) in order to demonstrate absence of mistake or lack of accident on the way this – the records were kept." (Document No. 128 at 288).

Iglehart is correct that trial counsel did not object when the offer of evidence was made. Iglehart, however, is not correct that counsel was deficient for failing to lodge a contemporaneous objection. On this record, such an objection would have been overruled. Iglehart's defense to all the charges was that she did not intentionally or knowingly submit false or fraudulent healthcare claims. Central to the Government's case, and Iglehart's defense, was Iglehart's knowledge and intent. The TMB evidence showed that Iglehart knew, in 2007, about her alleged poor recordkeeping practices, had been reprimanded by the Texas Medical Board about it, and had been required to take a recordkeeping class. That recordkeeping evidence was, therefore, relevant to Iglehart's defense that she, despite the TMB investigation and Agreed Order, continued with her poor recordkeeping and that any false claims submitted to Medicare or Medicaid was the sole result of her continued poor recordkeeping. The Court made specific mention of this during the parties' argument: "isn't this evidence in support of your theory, the case according to opening statement? She's a terrible recordkeeper and – and everybody – the Texas Medical Board has taken notice." (Document No. 128 at 285). In response to that inquiry, Iglehart's counsel stated, "That's a very

9

valid point, and it is the backup position we'll end up taking with the jury if you put this in." (Document No. 128 at 286).

> FED. R. EVID. 404(b) speaks to evidence of "crimes, wrongs, or other acts" as follows:
>
> (1) **Prohibited Uses**. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> (2) **Permitted Uses; Notice in a Criminal Case**. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

As set forth by the Fifth Circuit in connection with Iglehart's appeals, two factors are considered in admitting evidence under Rule 404(b): (1) whether the "extrinsic offense evidence is relevant to an issue other than the defendant's character;" and (2) whether the probative value of the evidence is substantially outweighed by its undue prejudice under FED. R. EVID. 403. *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978). Here, both factors for the admission of the TMB evidence in the record were met. The evidence offered and admitted was relevant to absence of mistake and/or lack of accident. In addition, given that the TMB evidence that was offered and admitted was *very* limited, its probative value was not substantially outweighed by a danger of unfair prejudice. Again, as mentioned by the Court during the trial, the TMB evidence could be viewed in two ways – as evidence that Iglehart knew her medical recordkeeping was under scrutiny at the time she submitted false healthcare claims, and as evidence that Iglehart's poor recordkeeping was endemic and explicative of the false healthcare claims at issue in this case. Because counsel, as stated on the record, had a "backup" plan for addressing the TMB evidence if it was admitted, counsel's failure to lodge a contemporaneous objection to that evidence was the product of reasoned professional judgment. On this record, there is no deficiency associated with trial counsel's failure to lodge a

contemporaneous objection to the TMB evidence.

There is, also, no prejudice within the meaning of *Strickland*. Again, the TMB evidence that was offered and admitted was *very* limited. Out of seven days of trial, the TMB investigation was testified about in 13 lines of the trial transcript (Document No. 129 at 269-270). Because the evidence did not permeate the trial, there is no reasonable likelihood that result of the trial, or the appeal, would have been different if counsel had lodged a contemporaneous objection to it. Evidence to which a proper objection has been lodged and preserved is reviewed on appeal for abuse of discretion. *United States v. Ricard*, 922 F.3d 639, 653 (5th Cir. 2019). And while a "'trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence'... '[e]vidence erroneously admitted under Rule 404(b) is subject to a harmless error inquiry and, therefore, '[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.'" *Id.* (internal citations omitted). Here, the Court's admission of the limited TMB evidence was not based on an erroneous view of the law or a clearly erroneous assessment of the evidence, and, as has already been determined by the Fifth Circuit, the admission of the TMB evidence did not affect Iglehart's substantial rights. As a result, trial counsel's failure to contemporaneously object to the TMB evidence did not prejudice Iglehart on appeal.

Iglehart's ineffective assistance of trial counsel claim fails on the merits.

**B.      Appellate Counsel**

Iglehart next complains that appellate counsel should have, in addition to the two claims that were raised on appeal: (1) challenged the sufficiency of the evidence to support the conspiracy verdict; and (2) challenged the Court's "deliberate indifference" instruction. For the reasons set

forth below, Iglehart's ineffective assistance of appellate counsel claims fail under the deficiency and prejudice prongs of *Strickland.*

### 1. Sufficiency of the Evidence Challenge

The sufficiency of the evidence challenge Iglehart contends appellate counsel should have raised on appeal is based on her argument that there is no evidence of an agreement between Iglehart and any other identifiable person to commit health care fraud. This sufficiency of the evidence argument was raised by trial counsel in a motion for acquittal at trial, and rejected by the Court in writing. Appellate counsel was not ineffective for failing to challenge the sufficiency of the evidence to support the conspiracy count, nor was Iglehart prejudiced on appeal thereby.

Because trial counsel moved for acquittal on the conspiracy count, a sufficiency of the evidence claim, if it had been raised on appeal, would have been subject to *de novo* review. *United States v. Danhach*, 815 F.3d 228, 235 (5th Cir.), *cert. denied*, ___ U.S. ___, 137 S.Ct. 119 (2016). *De novo* review entails a review of the jury verdict, taking all the evidence and all reasonable inferences from that evidence in a light most favorable to the verdict, to determine whether a rational jury "could have found the essential elements of the offense to be satisfied beyond a reasonable doubt." *United States v. Ganji*, 880 F.3d 760, 767 (5th Cir. 2018).

Here, while Iglehart believes that there was insufficient evidence of an "agreement" to defraud Medicare, which is required to support the conspiracy verdict, *see Ricard*, 922 F.3d at 647-48 ("To prove a conspiracy, the government must show the defendant knowingly and voluntarily entered into an agreement with another person to pursue an unlawful objective and committed an overt act in furtherance thereof"); *United States v. Gibson*, 875 F.3d 179, 185-86 (5th Cir. 2017) (healthcare conspiracy requires proof of three elements: "(1) two or more persons made an agreement

to commit health care fraud; (2) the defendant knew the unlawful purpose of the agreement; and (3) the defendant joined in the agreement willfully, that is, with the intent to further the unlawful purpose"), *cert. denied*, ___ U.S. ___, 138 S. Ct. 2664 (2018), the direct and substantial evidence of Iglehart's backdating of records and her false certifications and billing for psychotherapy services – not medication management, coupled with the knowledge and participation of Lawrence Willis at Riverside southeast, is sufficient, when taken in a light most favorable to the prosecution and the jury verdict, to support the "agreement" element of the conspiracy count. The Fifth Circuit wrote that the evidence of "Iglehart's fraudulent-billing practices" was voluminous. In addition, Willis testified that paperwork was prepared for Iglehart to backdate on the days she actually showed up the clinic, and that he knew she was spending very little time with the patients at the clinic. That knowledge, and Iglehart and Willis' concerted effort to backdate admission and treatment documents for billing purposes, is sufficient circumstantial evidence of an agreement to engage in fraudulent billing of Medicare. In light of the evidence in the record, appellate counsel was not ineffective for failing to raise a sufficiency of the evidence challenge.

### 2. Deliberate ignorance instruction

Iglehart also maintains that the Court's "deliberate ignorance" instruction should not have been given to the jury because there was no evidence of her subjective awareness of a high probability of the existence of illegal conduct, and no evidence that she purposely contrived to avoid learning of the illegal conduct, that appellate counsel was ineffective for failing to raise this jury instruction claim on appeal.

The record shows that the jury was given the following "deliberate ignorance" instruction:

13

> You may find that the defendant had knowledge of a fact if you find that the defendant deliberately closed her eyes to what would otherwise have been obvious to her. While knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant deliberately blinded herself to the existence of a fact. The trigger for deliberate indifference is that the evidence must raise two inferences: that the defendant (1) was subjectively aware of a high probability of the existence of the illegal conduct and (2) purposely contrived to avoid learning of the illegal conduct.

Court's Jury Instructions (Document No. 114) at 19. Prior to its submission, trial counsel objected to its inclusion on the basis that the instruction "allows the jury to convict under a lesser culpable mental state [than that] set out by the statute" (Document No. 134 at 4), but the Court overruled counsel's objection, stating that the instruction had been modified somewhat to include language from *United States v. Vasquez* (Document No. 134 at 4). Appellate counsel did not appeal that ruling, and was not, given the applicability of harmless error review, ineffective for failing to do so.

A deliberate ignorance instruction "should only be given when a defendant claims a lack of guilty knowledge and the proof at trial supports an inference of deliberate ignorance." *United States v. Wofford*, 560 F.3d 341, 353 (5th Cir. 2009). For there to be an inference of deliberate indifference, however, there must also be evidence of a defendant's "(1) subjective awareness of a high probability of the existence of illegal conduct, and (2) purposeful contrivance to avoid learning of the illegal conduct." *Id.* (cited and quoted in *Ricard*, 922 F.3d at 656). When error has been preserved to a deliberate ignorance instruction, challenges to the instruction are reviewed on appeal for abuse of discretion. *United States v. Miller*, 588 F.3d 897, 905 (5th Cir. 2009) ("We review the trial court's decision to issue a deliberate ignorance instruction for abuse of discretion."). But, despite that standard of review, harmless error applies to an erroneous deliberate ignorance instruction, with such an instruction being harmless if there is substantial evidence of a defendant's actual knowledge of

14

the wrongful conduct.  *United States v. Araiza-Jacobo*, 917 F.3d 360, 369 (5th Cir. 2019), *cert. denied*, No. 19-5436, 2019 WL 5686524 (U.S. Nov. 4, 2019).

Here, notwithstanding Iglehart's argument that there was no evidence from which an inference of deliberate indifference could arise, there *is* substantial evidence in the record of Iglehart's actual knowledge of her wrongdoing, with the Fifth Circuit essentially finding as much in connection with Iglehart's direct appeal. Consequently, even if a challenge had been raised by appellate counsel to the inclusion of the deliberate ignorance instruction, any error in that instruction was harmless, and would have been found such on appeal. *See id.* at 367-368 (finding that Court erred in giving deliberate ignorance instruction when there was no evidence the defendant "engaged in a 'purposeful contrivance to avoid learning of the illegal conduct,'" but finding, as well, that the error was harmless given the substantial evidence in the record of the defendant's actual knowledge of the wrongful conduct). Appellate counsel was therefore not ineffective for failing to raise such a claim on appeal.

## IV.    Conclusion and Recommendation

Based on the foregoing, and the conclusion that no relief is available to Iglehart on any of her ineffective assistance of counsel claims, the Magistrate Judge

RECOMMENDS that Iglehart's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 199) be DENIED and DISMISSED WITH PREJUDICE.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order

80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, this 19th day of November, 2019.

*[signature]*
FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE